ACCEPTED
01-15-00246-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/21/2015 8:17:17 AM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00246-CR

IN THE

COURT OF APPEALS

FIRST JUDICIAL DISTRICT

HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

10/21/2015 8:17:17 AM

CHRISTOPHER A. PRINE
Clerk

---

DORSEY NATHANIEL CARR, III,
Appellant

Vs.

THE STATE OF TEXAS,

Appellee

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

10/21/2015 8:17:17 AM

CHRISTOPHER A. PRINE
Clerk

---

ON APPEAL IN CAUSE NO. 74,219

239th JUDICIAL DISTRICT COURT, BRAZORIA COUNTY, TEXAS

HONORABLE PATRICK SEBESTA, JUDGE PRESIDING

---

**BRIEF FOR THE STATE**

---

JERI YENNE
CRIMINAL DISTRICT ATTORNEY
BRAZORIA COUNTY, TEXAS

DAVID BOSSERMAN
Assistant Criminal District Attorney
111 E. Locust, Suite 408A
Angleton, Texas 77515
(979) 864-1230
(979) 864-1525 (Fax)
Bar Card No. 02679520
davidb@brazoria-county.com

ATTORNEYS FOR APPELLEE
DATE: OCTOBER 21, 2015

Oral Argument is Not Requested

NO. 01-15-00246-CR

IN THE

| | | |
|---|---|---|
| 239TH JUDICIAL DISTRICT COURT | § | COURT OF APPEALS |
| OF | § | FIRST JUDICIAL DISTRICT |
| BRAZORIA COUNTY, TEXAS | § | HOUSTON, TEXAS |

DORSEY NATHANIEL CARR, III,

Appellant

Vs.

THE STATE OF TEXAS,

Appellee

═══════════════════════════════════════════════════════

**BRIEF FOR THE APPELLEE**

═══════════════════════════════════════════════════════

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

The State of Texas, the prosecuting authority in Cause No. 74,219 in the 239th Judicial District Court of Brazoria County, Texas, respectfully submits this brief in reply to the brief of Defendant-Appellant, DORSEY NATHANIEL CARR, III, and would respectfully show the Court the following:

# SUBJECT INDEX

**Parties To The Case**................................................................................iv

**List of Authorities**.................................................................................v

**Statement Of The Case**..........................................................................1

**Statement Of Facts**................................................................................1

**Summary Of Argument**..........................................................................6

    *First Point of Error*............................................................................6

    *Second Point of Error*.......................................................................7

**STATE'S REPLY TO APPLEANT'S FIRST POINT OF ERROR**...................8

    *The Appellant claims trial counsel was ineffective in failing to file*
    *a motion to suppress the stop, claiming there was no reasonable*
    *suspicion to justify it.  There was reasonable suspicion to justify*
    *the stop and trial counsel was not ineffective in failing to file*
    *a motion to suppress the stop*.............................................................8

**DISCUSSION**.......................................................................................8

    *Ineffective Assistance – Standard of Review*.......................................8

    *Ineffective Assistance by Failure to Present Motion to Suppress*...................10

    *Investigative Detention*....................................................................11

    *Analysis*........................................................................................13

    *Burden to Show Prejudice from the Record*........................................18

**STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR**.........20

    *The Appellant claims that the evidence in the record of the*
    *Appellant's ability to pay his attorney fees was insufficient*
    *to support the assessment of these fees against him.  The*
    *State concedes error*.........................................................................20

**DISCUSSION**.....................................................................................20

**CONCLUSION**....................................................................................21

**CERTIFICATE OF COMPLIANCE**..........................................................22

**CERTIFICATE OF SERVICE**.................................................................22

# PARTIES TO THE CASE

APPELLANT:   DORSEY NATHANIEL CARR, III

Attorney for Appellant at Trial:

  Name:  Laura Dagley Dowdy
  Address: 801 Congress, Ste. 400
      Houston, TX  77002

Attorney for Appellant on Appeal:

  Name:  John Davis
  Address  P.O. Box 787
      Angleton, TX  77516-0787

APPELLEE:    THE STATE OF TEXAS

Attorney for the State at Trial:

  Name:  Aaron Perry, Lilian Martinez
  Address: Brazoria County Criminal District Attorney's Office
      Brazoria County Courthouse
      111 E. Locust, Suite 408A
      Angleton, Texas  77515
      (979) 864-1230
      (979) 864-1525 (Fax)

Attorney for the State on Appeal:

  Name:  David Bosserman
      Assistant Criminal District Attorney
  Address: Brazoria County Criminal District Attorney's Office
      Brazoria County Courthouse
      111 E. Locust, Suite 408A
      Angleton, Texas  77515
      (979) 864-1230
      (979) 864-1525 (Fax)
      davidb@brazoria-county.com

# LIST OF AUTHORITIES

**Cases**

***Bone v. State***, 77 S.W.3d 828 (Tex. Crim. App. 2002)..................................... 10, 18

***Derichsweiler v. State***, 348 S.W.3d 906 (Tex. Crim. App. 2011) ..........................12

***Garcia v. State***, 57 S.W.3d 436 (Tex. Crim. App. 2001), *cert. denied,*
    123 S.Ct. 1351 (2003).........................................................................................10

***Hathorn v. State***, 848 S.W.2d 101 (Tex. Crim. App. 1992), *cert. denied,*
    113 S.Ct. 3062 (1993) ..........................................................................................9

***Hernandez v. State,*** 988 S.W.2d 770 (Tex. Crim. App. 1999) ................................8

***Hiibel v. Sixth Judicial Dist. Court***, 542 U.S. 177, 124 S.Ct. 2451,
    159 L.Ed.2d 292 (2004)........................................................................................11

***In re Daniel***, 396 S.W.3d 545 (Tex. Crim. App. 2013).........................................21

***Jackson v. State***, 877 S.W.2d 768 (Tex. Crim. App. 1994).....................................9

***Jackson v. State***, 973 S.W.2d 954 (Tex. Crim. App. 1998)...................................10

***Kesaria v. State,*** 148 S.W.3d 634 (Tex. App. - Houston [14th Dist.]
    2004), *aff'd*, 189 S.W.3d 270 (2006) ....................................................................9

***Louis v. State,*** 825 S.W.2d 752 (Tex. App. - Houston [14th Dist.]
    1992, *pet. ref'd*)...................................................................................................16

***Mayer v. State***, 309 S.W.3d 552 (Tex. Crim. App. 2010)......................................20

***McFarland v. State***, 845 S.W.2d 824 (Tex. Crim. App. 1992), *overruled on
    other grounds*, 915 S.W.2d 9 (1994), *cert. denied*, 113 S.Ct. 2937 (1993)...........9

***Mitchell v. State***, 68 S.W.3d 640 (Tex. Crim. App. 2002).....................................10

***Mount v. State,*** 217 S.W.3d 716 (Tex. App. - Houston
    [14th Dist.] 2007, *no pet*.) ...................................................................................16

*Orsag v. State*, 312 S.W.3d 105 (Tex. App. – Houston [14th Dist.]

   2010, *pet. ref'd*) ...............................................................................15

*Roberson v. State*, 852 S.W.2d 508 (Tex. Crim. App. 1993)...................................10

*State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013)......................................9

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) .8

*Terrell v. State*, ___ S.W.3d ___, No. 14-14-00390-CR, 2015 WL 4594054,

   at (Tex. App. – Houston [14th Dist.] July 30, 2015, *no pet*.)..............................11

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999)................................9, 18

*Wert v. State*, 383 S.W.3d 747 (Tex. App. – Houston [14th Dist.]

   2012, *no pet.*) ...............................................................................11, 18

**Codes**
**Tex. Crim. Proc. Code Ann. Art. 26.05 (Vernon Supp. 2013)**..........................20

## STATEMENT OF THE CASE

The Appellant was indicted for the offense of felony driving while intoxicated, enhanced (CR 1 at 5). After hearing the evidence and the argument of counsel, the jury found him guilty as charged beyond a reasonable doubt (CR 1 at 43, 53, 54; RR 5 at 51-52). At the punishment phase, the State admitted evidence of several prior convictions for driving while intoxicated. The Jury assessed punishment at 10 years imprisonment (CR 1 at 50, 53, 54; RR 6 at 5).

## STATEMENT OF FACTS

The evidence showed the Appellant was stopped after a citizen called the police to report his reckless driving. Based on personal observation and field sobriety tests, Officers determined he was intoxicated. This was further confirmed by a blood test.

On July 20, 2014, Jordan Brooks was driving back to his house in Angleton from Surfside beach with his wife and children, a six and seven year old. He was driving on Highway 523 (RR 3 at 25-27). A red van came up behind them and almost rear-ended their car. The driver of the van then drove around them. When he came back into his lane of travel, the Appellant almost clipped the front of their vehicle. The van then went off the road and came back. When the driver came back on the road, he went into oncoming traffic, almost hit another car head on, and then swerved back into his lane. Mr. Brooks felt it was best to drive around this vehicle

1

and just get away from him (RR 3 at 27, 28). This occurred at about 6:00 pm. The driver of the van was a white male (RR 3 at 28, 35, 36). There was only one person in the van. The van was a nineties model red Plymouth or Chrysler van. Mr. Brooks was not able to get a license plate (RR 3 at 28).

The reckless driver drove down Highway 523 towards Angleton and then turned at Stratton Ridge Road toward Clute. When he made this turn, he did not slow down, and his van almost flipped (RR 3 at 28, 29). Stratton Ridge Road is also known as Highway 226 (RR 3 at 38). Mr. Brooks called 911 when the Appellant first recklessly passed him. He did not want anyone to get hurt, including himself or his family (RR 3 at 29). The State admitted the 911 call as State's exhibit one (RR 3 at 30).

In State's exhibit one, Mr. Brooks describes the vehicle as a nineties model red Chrysler minivan (RR at SX1 at 1:28). He told dispatch that the driver was on Highway 523; had just turned onto Stratton Ridge Road; and was driving toward Clute (RR at SX1 at :55, 1:10, 1:40, 2:30). He only made reference to a single driver with no reference to any passengers (RR at SX1).

On July 20, 2014, around 6:00 or 6:30 pm, Patrol Officer Edward Burnett with the Clute Police Department was notified by dispatch of a reckless driver in a red minivan traveling into Clute from Stratton Ridge Road (RR 3 at 130-132). He did not remember all the details as to how dispatch described the vehicle (RR 3 at

2

159). While on Main Street, he saw two vehicles matching the description given him by dispatch. Stratton Ridge Road becomes Main Street. He first drove to the vehicle which pulled into a convenience store because the other vehicle was heading towards the police station (RR 3 at 133). However, the vehicle at the convenience store was driven by a Hispanic male with two children, so he immediately knew it was the wrong vehicle (RR 3 at 133). He did not talk to this driver more than 10 to 15 seconds (RR 3 at 156). He then double backed toward the other vehicle and saw it pulling into a bar. The bar was about a block and a half to two blocks from where he first saw the two red vans (RR 3 at 163, 164). Sergeant Soley, who he had been in radio contact with, pulled in first (RR 3 at 134, 135, 157). Officer Soley came in contact with the Appellant and gave him standardized field sobriety tests (RR 3 at 138). Officer Burnett later transported the Appellant to Brazosport Hospital for a blood draw (RR 3 at 139). The Appellant voluntarily gave his consent for the blood draw. He signed the consent form which was admitted into evidence (RR 3 at 140-145). Nurse Anel Casas drew the Appellant's blood (RR 3 at 145, 150, 151, 169-173).

Patrol Sergeant Jessie Soley with the Clute Police Department received a dispatch of a report of a reckless driver that had turned onto Stratton Ridge Road coming into Clute (RR 3 at 49). This was on July 20, 2014. Around 6:30 pm he came in contact with a nineties model red Plymouth or Dodge minivan (RR 3 at

3

46-48, 76, 77). This matched the description given to him by dispatch (RR 3 at 49, 112). It was driven by a white male, which also matched the information given him by dispatch (RR 3 at 112). Sergeant Soley identified the Appellant as the driver of the vehicle (RR 3 at 48). The video from his patrol unit of the incident was admitted as State's exhibit three (RR 3 at 73, 74).

When the Sergeant made contact with the Appellant, he was getting out of the driver's seat of the vehicle. The Appellant was the only person in the vehicle. The Appellant told him he was coming from Surfside beach (RR 3 at 49, 50, 76); (RR at SX3 at :30, 1:55). When asked if he had been driving recklessly earlier, he stated that he did not know, but then denied it (RR 3 at 51); (RR at SX3 at 1:00). The Appellant had a strong odor of alcohol coming from his person; his speech was very slurred; his balance unstable; and his eyes were red and bloodshot. He admitted that he drank 5 beers (RR 3 at 52, 53); (RR at SX3 at 1:25). He agreed to do field sobriety testing (RR 3 at 54, 55); (RR at SX3 at 3:00).

The Appellant had difficulty with the sobriety tests. First, he did not complete the horizontal gaze nystagmus test. The Sergeant believed this is because of lack of cooperation, but he was not sure. The Appellant would not focus on the Officer's pen during the test even though the Officer tried to administer the test repeatedly (RR 3 at 56, 59) (RR at SX3 at 3:55). The Appellant had earlier indicated problems with his eyes (RR 3 at 55). When the Appellant attempted the

4

walk and turn test, he lost his balance during the instructional phase; said he was not able to do the test; and stopped (RR 3 at 60-62) (RR at SX3 at 5:30). During the one legged stand test, he lifted his right foot off the ground about 3 inches; immediately put it back down; and said that he couldn't do the test (RR 3 at 62, 63) (RR at SX3 at 6:30). When asked to recite the alphabet, the Appellant left out a letter (RR 3 at 64) (RR at SX3 at 7:15). Sergeant Soley then placed the Appellant into custody. After the test, the Sergeant asked him how intoxicated he believed himself to be on a scale of one to 10 and he answered that he was a 6 or 7 (RR 3 at 65) (RR at SX3 at 8:00). In the Officer's opinion, the Appellant was intoxicated (RR 3 at 66, 67, 78, 79).

The Appellant was transported to the station, given his DIC-24 warnings, and there consented to give a blood sample (RR 3 at 66-69, 72). The Sergeant asked for a blood sample rather than a breath test because it is difficult to get an intoxilyzer operator to the jail to conduct a breath test (RR 3 at 91). Officer Burnett transported Appellant to Brazosport Regional Hospital for the blood draw (RR 3 at 77). When the Appellant was brought back from blood draw, he urinated on the floor in the holding cell even though he had been allowed to use the restroom shortly before the blood draw (RR 3 at 78).

Paul Van Dorn, who works as director for the Brazoria County Sheriff's Office Crime Laboratory, did the analysis of the Appellant's blood (RR 4 at 10-

13). He determined the Appellant's ethanol level to be 0.255 grams per 100 milliliters of blood, which is over three times the legal limit in Texas. In his opinion, the Appellant was intoxicated (RR 4 at 17, 18).

## SUMMARY OF ARGUMENT

### *First Point of Error*

The Appellant claims trial counsel was ineffective in failing to file a motion to suppress because he contends there was no reasonable suspicion to justify the stop of his vehicle. He specifically claims that there was insufficient evidence to tie in the Appellant with observations by a citizen witness that he was driving recklessly. Trial counsel was not ineffective. The Appellant cannot meet his burden to show prejudice because the Officer involved had reasonable suspicion to make the stop. The evidence at trial showed:

1) A civilian, Jordan Brooks, observed a red 1990 model Plymouth or Chrysler van being driven recklessly by a white male, who was by himself, at approximately 6:00 pm on July 20, 2014.

2) Mr. Brooks observed the van driving on Highway 523 towards Angleton and turning onto Stratton Ridge Road toward Clute.

3) The van almost rear ended Mr. Brook's vehicle; almost clipped his vehicle when it passed; ran off the road; drove back into oncoming traffic; almost

6

hit another vehicle head on; then almost flipped when it turned onto Stratton Ridge Road.

4) Mr. Brooks called 911, telling them of the reckless driving. He described the vehicle as a nineties model red Chrysler minivan; which had just turned onto Stratton Ridge Road; and was driving toward Clute.

5) On July 20, 2014, around 6:00 or 6:30 pm, Patrol Officer Edward Burnett with the Clute Police Department was notified by dispatch of a reckless driver in a red minivan traveling into Clute from Stratton Ridge Road. While on Main Street, which becomes Stratton Ridge Road, he observed the Appellant's vehicle, which met this description. The vehicle pulled into the parking lot of a bar. Sergeant Soley, who Officer Burnett had been in radio contact with, pulled in the bar and made contact with the Appellant. This contact subsequently resulted in the Appellant's arrest for the instant offense. The Appellant cannot show ineffective assistance by not filing a motion to suppress because there was reasonable suspicion for the stop.

## *Second Point of Error*

The Appellant claims that the evidence in the record of the Appellant's ability to pay his attorney fees was insufficient to support the assessment of these fees against him. The State concedes error on this claim.

**STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR**

*The Appellant claims trial counsel was ineffective in failing to file a motion to suppress the stop, claiming there was no reasonable suspicion to justify it. There was reasonable suspicion to justify the stop and trial counsel was not ineffective in failing to file a motion to suppress the stop.*

## DISCUSSION

Trial counsel was not ineffective in failing to file a motion to suppress. The Appellant claims there was no reasonable suspicion to justify the stop. He claims that there was insufficient evidence to tie the Appellant in with observations by a citizen witness that he was driving recklessly. Trial counsel was not ineffective.

*Ineffective Assistance – Standard of Review*

The Appellate Courts use a two-pronged test to review claims of ineffective assistance of counsel. A defendant must show trial counsel's actions were not reasonable and that the defendant suffered prejudice as a result of these unreasonable acts. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984; *Hernandez v. State,* 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). First, a defendant must show that his counsel's representation fell below an objective standard of reasonableness. *Strickland*, 104 S.Ct. at 2064. To prove this deficiency in representation, the defendant must demonstrate that his counsel's performance deviated from prevailing professional norms. *Id.* at 2065; *McFarland*

8

*v. State*, 845 S.W.2d 824, 842-43 (Tex. Crim. App. 1992), *overruled on other grounds*, 915 S.W.2d 9 (1994), *cert. denied*, 113 S.Ct. 2937 (1993).

Second, the defendant must show prejudice. *Strickland*, 104 S.Ct. at 2064. This requires the defendant to show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 2068. Both prongs of the *Strickland* test must be met before a case may be reversed for ineffective assistance of counsel. *Id.* at 2064. A defendant bears this burden of proof by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Judicial scrutiny of counsel's performance must be highly deferential. Appellate courts indulge a strong presumption that counsel was effective. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Isolated failures of counsel, by themselves, do not constitute ineffective assistance of counsel. *McFarland v. State*, 845 S.W.2d at 843; *Hathorn v. State*, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992), *cert. denied*, 113 S.Ct. 3062 (1993). When evaluating an allegation of ineffective assistance, an appellate court looks to the totality of the representation and the particular circumstances of each case. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Kesaria v. State,* 148 S.W.3d 634*,* 638 (Tex. App. - Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 270 (2006). The fact that another

9

attorney may have acted in a different manner will not be sufficient to prove ineffective assistance. *Kesaria*, *148 S.W.3d* at 638. An error in trial strategy will be considered inadequate only if counsel's actions lack any plausible basis. *Id.*

A claim of ineffective assistance must be firmly founded in the record. ***Bone v. State***, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Generally, the record on direct appeal is not sufficient to establish a claim of ineffective assistance of counsel because a silent record cannot rebut the presumption that counsel's performance was based on sound or reasonable trial strategy. ***Mitchell v. State***, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); ***Kesaria***, 148 S.W.3d at 638. In the absence of a record explaining trial counsel's actions, a reviewing court most likely cannot conclude trial counsel's performance fell below an objective standard of reasonableness unless the conduct was so outrageous that no competent attorney would have engaged in it. ***Garcia v. State***, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 123 S.Ct. 1351 (2003); ***Kesaria,*** 148 S.W.3d at 638.

***Ineffective Assistance by Failure to Present Motion to Suppress***

A defendant cannot show trial counsel is ineffective in failing to present a motion to suppress unless he shows that the motion had merit and that a ruling on the motion would have changed the outcome of the case. ***Jackson v. State***, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998)*; **Roberson v. State**,* 852 S.W.2d 508, 510–12 (Tex. Crim. App. 1993). He must show by a preponderance of the evidence

that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App. – Houston [14th Dist.] 2012, *no pet.*). To meet this burden, a defendant is required to produce evidence that defeated the presumption of proper police conduct. *Jackson v. State*, 973 S.W.2d at 957; *Wert v. State*, 383 S.W.3d at 753. That there may be questions about the validity of a search is not enough. *Jackson v. State*, 973 S.W.2d at 957.

*Investigative Detention*

In the instant case, the Appellant cannot show that trial counsel was ineffective because the stop was a proper investigative detention. Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a full custodial arrest must be justified by reasonable suspicion. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). *Terrell v. State*, ___ S.W.3d ___, No. 14-14-00390-CR, 2015 WL 4594054, at *2 (Tex. App. – Houston [14th Dist.] July 30, 2015, *no pet.*). "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185, 124 S.Ct. 2451, 2458, 159 L.Ed.2d 292 (2004). Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would

lead him or her to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *State v. Kerwick*, 393 S.W.3d at 273. These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to a crime, but the likelihood of criminal activity need not rise to the level required for probable cause to arrest. *Id.* at 273, 274. The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Id.* at 274. A reasonable-suspicion determination must be based on the totality of the circumstances, and reasonable suspicion may exist even if the circumstances presented are as consistent with innocent activity as with criminal activity. *Id.*

Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain. Rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A 911 police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.*

Finally, information provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his

report may be regarded as reliable. *Id.* at 914, 915. In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Id.* at 915.

*Analysis*

The testimony presented at trial showed:

1) Jordan Brooks observed a red 1990 model Plymouth or Chrysler van driven by a white male who was by himself at approximately 6:00 pm on July 20, 2014 (RR 3 at 25-27, 28, 35, 36).

2) Mr. Brooks observed the van driving on Highway 523 towards Angleton and turning onto Stratton Ridge Road toward Clute (RR 3 at 25-29).

3) The van was driven in a reckless manner. It almost rear ended Mr. Brook's vehicle; it almost clipped his vehicle when it passed; it ran off the road into oncoming traffic, almost hitting another vehicle head on; then it almost flipped when it turned onto Stratton Ridge Road (RR 3 at 27-29).

4) Mr. Brooks called 911, telling the dispatcher of the reckless driving. The State admitted the 911 call as State's exhibit one (RR 3 at 30). In State's exhibit one, Mr. Brooks described the vehicle as a nineties model red Chrysler minivan (RR at SX1 at 1:28). He told dispatch that the driver was on Highway 523; had just

13

turned onto Stratton Ridge Road; and was driving toward Clute (RR at SX1 at :55, 1:10, 1:40, 2:30). He only makes reference to a single driver with no reference to any passengers (RR at SX1).

5) On July 20, 2014, around 6:00 or 6:30 pm, Patrol Officer Edward Burnett with the Clute Police Department was notified by dispatch of a reckless driver in a red minivan traveling into Clute from Stratton Ridge Road (RR 3 at 130-132). He did not remember all the details as to how dispatch described the vehicle (RR 3 at 159). While on Main Street, he saw two vehicles matching the description given him by dispatch. Stratton Ridge Road becomes Main Street, so he was on the same road that Mr. Brooks observed the Appellant turn onto. Officer Burnett first drove to the vehicle which pulled into a convenience store (RR 3 at 133). However, the vehicle at the convenience store was driven by a Hispanic male with two children, so he immediately knew it was the wrong vehicle (RR 3 at 133). He did not talk to this driver more than 10 to 15 seconds (RR 3 at 156). He then double backed toward the other vehicle and saw it pulling into the parking lot of a bar. The bar was about a block and a half to two blocks from where he first saw the two red vans (RR 3 at 163, 164). Sergeant Soley, who he had been in radio contact with, pulled in and came in contact with the vehicle (RR 3 at 134, 135, 157).

6) Patrol Sergeant Jessie Soley with the Clute Police Department received a dispatch of a report of a reckless driver that had turned onto Stratton Ridge Road

14

coming into Clute (RR 3 at 49). This was on July 20, 2014. Around 6:30 pm he came in contact with a nineties model red Plymouth or Dodge minivan (RR 3 at 46-48, 76, 77). This matched the description given to him by dispatch (RR 3 at 49, 112). It was driven by a white male, which also matched the information given him by dispatch (RR 3 at 112). When the Sergeant made contact with the Appellant, he was getting out of the driver's seat of the vehicle. The Appellant was the only person in the vehicle. The Appellant told him he was coming from Surfside beach (RR 3 at 49, 50, 76); (RR at SX3 at :30, 1:55). When asked if he had been driving recklessly earlier, he first stated that he did not know, but then denied it (RR 3 at 51); (RR at SX3 at 1:00). The Appellant had a strong odor of alcohol coming from his person; his speech was very slurred; his balance unstable; and his eyes were red and bloodshot. He admitted that he drank 5 beers (RR 3 at 52, 53); (RR at SX3 at 1:25). From this point field sobriety tests and a blood test confirmed the Appellant's intoxication.

The above evidence was more than sufficient to provide reasonable suspicion for an investigative stop. In *Orsag v. State*, 312 S.W.3d 105 (Tex. App. – Houston [14th Dist.] 2010, *pet. ref'd*), the defendant claimed there was insufficient reasonable suspicion to stop him. He claims the information linking his vehicle to a speeding vehicle observed earlier by another officer was inadequate to support the stop. The officer who conducted the stop testified that dispatch informed him that a

15

blue Toyota pickup was seen speeding on Highway 59 in Houston about ten minutes travel time away from where a second officer observed him. This was on a Friday night. The Toyota was traveling in the arresting officer's direction and this officer saw him very soon after the dispatch. He had no other information regarding the vehicle and had no separate reason to be suspicious of the vehicle. But there were no other blue Toyota pickups in his area. The Court of Appeals held that this information provided the officer sufficient reasonable suspicion to support the Stop. *Id.* at 110-112 ; *See also* **Mount v. State***,* 217 S.W.3d 716, 728, 729 (Tex. App. - Houston [14th Dist.] 2007, *no pet.*) (finding reasonable suspicion sufficient to stop "light colored" Cadillac pickup seen within minutes after officer received call about a stolen white Cadillac pickup); **Louis v. State***,* 825 S.W.2d 752, 756 (Tex. App. - Houston [14th Dist.] 1992, *pet. ref'd*) (finding reasonable suspicion sufficient to stop three black males in light tan colored Cadillac based on report of two black males driving away from a robbery in a white Oldsmobile).

In reaching its decision, the court considered six factors in reviewing the sufficiency of the nexus between the first officer's observations of speeding and the subsequent location and stop of the suspect: (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons in that area; (4) the

16

known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation. *Orsag v. State,* 312 S.W.3d at 111. The court noted, however, that the primary test is consideration of the totality of the circumstances and that the factors may vary in different cases. *Id.* at 112.

In the instant case, the Appellant was stopped while driving in the same direction, on the same road as where he had been observed driving recklessly shortly prior to when he was stopped. The area he was stopped would be considerably less crowded than Highway 59 in Houston on a Friday night. The information relayed to dispatch in the instant case included the color, year, make, and model of the vehicle; more information than that possessed by the officer in the *Orsag* case. The record also suggests that Jordan Brooks gave information to dispatch beyond the portion of the 911 tape admitted. Mr. Brooks testified that the suspect vehicle was driven by a white male on who was by himself (RR 3 at 25-27, 28, 35, 36). Officer Burnett apparently had this information because he testified that he immediately knew the first van he stopped was the wrong vehicle because it was driven by a Hispanic male with two children (RR 3 at 133). In addition, Sergeant Soley stated that dispatch informed him the van was driven by a white

male (RR 3 at 112). The evidence in the instant case was sufficient to show reasonable suspicion for the stop.

### Burden to Show Prejudice from the Record

Finally, the Appellant cannot meet his burden to show prejudice from the record. The vagueness of some of the evidence presented at trial regarding the stop demonstrates this flaw with the Appellant's claim. Because the issue of reasonable suspicion for the stop was not fully developed at trial, the Appellant cannot show prejudice because his claim of ineffective assistance is not "firmly founded in the record." *See* **Bone v. State**, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). For example, the admission of the dispatch records as to the exact time the 911 call was received and the exact time Sergeant Soley came in contact with the Appellant was not presented to the trial court. This information would have aided the trial court in determining reasonable suspicion for the stop. The record could, however, be developed as part of a post-conviction writ.

The instant claim is not an appeal of a denial of a motion to suppress, but an ineffective assistance of counsel claim. The Appellant, not the State, has the burden to show prejudice. **Thompson v. State**, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The Appellant must show by a preponderance of the evidence that the motion to suppress would have been granted. **Wert v. State**, 383 S.W.3d 747, 753 (Tex. App. – Houston [14th Dist.] 2012, *no pet.*). To meet this burden, he is

required to produce evidence that defeats the presumption of proper police conduct. *Id.* Any claim of ineffective assistance must be firmly founded in the record. ***Bone v. State***, 77 S.W.3d at 835. Because no motion to suppress the ***detention*** was filed, the State did not develop evidence at trial to show reasonable suspicion for the stop. The Appellant's ***motion to suppress the blood*** does claim lack of identification of the Appellant's vehicle; but the Appellant argued in this motion that this resulted in an inability to show the Appellant was driving in a public place as required under section 724.012 of the Transportation Code (CR at 10, 11). Because Officer Burnett personally observed the Appellant driving, whether the Appellant was driving recklessly earlier was inconsequential. There was no need for the State to link the Appellant personally with the earlier reckless driving observed by Mr. Brooks in order to show he was driving on a public road. Because the issue of whether the stop was based on reasonable suspicion was not fully developed, the Appellant cannot meet his burden to show, from the record, that he was prejudiced by his counsel's failure to file a motion to suppress. He failed to meet the second prong of the Strickland test to show prejudice.

## STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR

*The Appellant claims that the evidence in the record of the Appellant's ability to pay his attorney fees was insufficient to support the assessment of these fees against him. The State concedes error.*

## DISCUSSION

The Appellant complains that the Court assessed attorney fees in violation of Article 26.05(g) of the Code of Criminal Procedure. That article provides:

> (g) If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay. **Tex. Crim. Proc. Code Ann. art. 26.05 (Vernon Supp. 2013).**

The Judgment reflects the Appellant was assessed $2,954.53 in attorney fees (CR 1 at 53, 54). Prior to trial, the Appellant filed an affidavit of indigence and attorney Laura Dagley Dowdy was appointed to represent him at trial (CR at 4-8). At the conclusion of trial, the trial court found that the Appellant was indigent and did not have sufficient funds to pay for the appellate record or to pay for an attorney on appeal. These were provided without cost to the Appellant (CR at 69, 69, 74). The record contains no indication of a hearing to determine if the Appellant had the financial resources to pay for his trial attorney, nor does the record reflect that this determination was made. In *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010), the Court of Criminal Appeals held that in order to

comply with article 26.05, the record must contain evidence supporting a finding that a defendant was able to pay his attorney fees. *Id.* at 557. Because this is a matter of sufficiency of the evidence, the Appellant need not preserve error by objecting before the trial court. *Id.* at 556. Once a defendant is determined by the court to be indigent, he is presumed to remain indigent for the remainder of the proceedings. *Id.* The State concedes that the evidence was insufficient to support the assessment of attorney's fees. The remedy is to delete the assessment of these fees. *See In re Daniel*, 396 S.W.3d 545, 549 (Tex. Crim. App. 2013).

## CONCLUSION

WHEREFORE, the State of Texas prays that judgment of conviction against Appellant be upheld by the Court of Appeals for the First Judicial District of Texas.

Respectfully submitted,


/S/  Jeri Yenne
**JERI YENNE**
CRIMINAL DISTRICT ATTORNEY
BRAZORIA COUNTY, TEXAS
SBN 04240950

/S/  David Bosserman
**DAVID BOSSERMAN**
Assistant Criminal District Attorney
SBN 02679520
111 East Locust, Suite 408A
Angleton, Texas  77515

21

(979) 864-1230
(979) 864-1525 (Fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

**CERTIFICATE OF COMPLIANCE**

I hereby certify that Appellant Brief for the State, as calculated under Appellate Rule 9.4(i), contains 5,184 words as determined by the Word program used to prepare this document.

/S/  David Bosserman
**DAVID BOSSERMAN**

**CERTIFICATE OF SERVICE**

The undersigned Attorney for the State of Texas certifies that a true copy of this brief was served by E-service in compliance with Local Rule 4 of the Court of Appeals or was served by fax in compliance with Article 9.5 of the Rules of Appellate procedure on John Davis, attorney for the Appellant, who offices at 205 N. Chenango, Angleton, Texas, this 21st day of October, 2015.

/S/  David Bosserman
**DAVID BOSSERMAN**